*140
 
 Ruffin, C. J.
 

 The court thinks, that the plaintiff is ent*t'e^ 10 a decree. By the law, as it stood before 1842, she would undoubtedly be thus entitled. The entry under which the defendants elaim, lost its efficacy on the 16th of December, 1841, having then finally lapsed. The land, being thus vacant, was entered by the plaintiff in August, 1842. The law allowed her until the 31st of December, 1844, to pay the purchase money ; and, upon her doing so, it assured her that she should have a grant upon application in due time. The entry, it not a contract with the State, strictly speaking, at the least creates an inchoate valuable interest, sustained by a statute and the guaranty of the public faith. That interest, il the enterer performs the conditions imposed by law, no authority can justly take away or deny. From considerations of indulgence to the citizens, and from motives of policy in having all the land appropriated as soon as possible, the Legislature has often relaxed the strictness of the terms as to the time of payment and in other respects, so as both to prevent subsisting entries from becoming lapsed, and to revive some already lapsed. But it is manifest, that there is neither justice nor propriety in reviving an expired entry, to the destruction or prejudice of another duly made and subsisting, and in due progress to be consummated into a legal title. It is not to be presumed that the Legislature intended to interfere between entries in those States; because such interference cannot be necessary io the public interest, and must be to the prejudice of private right. It requires the strongest ianguage.and clearest intent, to authorize such a construction of a statute, as would produce such an interference. When a lapsed entry is revived, there is a proviso tacitly implied, if not expressed, that another right then subsisting should not be made void or impaired. This is the more reasonable, when a fair and just operation can be given to the law by applying it to the rights of the .public and not those of individuals. Forexample, when the entry lapses and the land reverts to the State, the same person cannot re-enter it within twelve months, though other persons may immediately. A remis
 
 *141
 
 sion of that forfeiture or a dispensation from that disability affords scope enough for the enactment extending the time completing the title. The State says, she will not insist on forfeitures and disabilities, which she imposed for her own policy, and for the like reason relaxes ; and, therefore, that a person, who entered land and failed to pay for it, and, consequently is not entitled to it against the State, may yet pay for it and have it. That is the legislative purpose in the enactments of this character. In waiving those penalties, as a bounty to those who have failed in diligence and punctuality, an intention cannot be supposed, in effect to inflict them on another who has been guilty of no
 
 laches,
 
 by depriving the latter of the preference to which, before, he was legally entitled. The lapsed entry is-revived ; but not so as to make it an entry, as of its date, and thus to postpone to it a junior entry subsisting at the passing of the act. Against another subsisting entry, one that has lapsed is revived as the date of the statute by which it is revived. The lapsed entry is itself the junior entry in point of equity and a just construction of the law ; and an entry, in full force at the time of passing the reviving act, if perfected in due time, is the preferable one. Such we should conceive to be the construction, if there were no saving in favor of junior enterers in the acts on this subject.
 

 But the Legislature has been careful that this should not be a matter of labored construction ; for in all the acts on this subject, and they aie numerous, there are, through abundant caution, provisos, saving existing rights, expressed more or less clearly. There are so many acts of this sort and with such provisos, that the principle may be considered as thoroughly incorporated into our legislation, and, therefore, that there was no intention to abandon it in the acts of 1842. If the language of those acts be not so explicit as those made before them, it would yet be a judicial duty, as far as possible, to interpret them in conformity with the body of the laws upon this subject as conservative of existing rights. The proviso in the 34th chapter expressly protects “ the rights of junior entererswhich includes all junior en
 
 *142
 
 terers, whether they had then paid the purchase money or not. The next chapter, (35) has a proviso somewhat differ-
 
 1 K ' 1
 
 ent in point of form. It is, “that the same shall not interpere wjth ally delinquent entry, for which the purchase money may have been paid.” Upon these words the argument for the defendants is, that those entries only are saved on which the purchase money had been paid at the passing of the act; and that all others, whether lapsed or not, are put on the same footing, and, therefore, that the enterer who paid first after the act, has the preference. We have already seen, that such an enactment would be unjust, as far as it deprived one of the parties of his prior right. And we do not think that there is a necessity for receiving this act in that sense. The argument is just, as applied to two entries, which had both lapsed and were both revived by the act. As neither could get the land but by that act, they stand on the same ground, and then the general principle applies, that priority of time in making payment creates a priority of equity. Perhaps the true construction may be, that the proviso in the second act looks only to the cases of two lapsed entries, on one of which, however, the purchase money had been paid, so as to make the lapse arise from not completing the title by taking a grant. This construction is suggested by several considerations. This chapter is to “amend” and not to “repeal” the preceding chapter in any part; and both were passed at the same session. They are, therefore, to be considered but «parts of the same statute, an.d to be construed so as-to render all-the provisions consistent. The object of the second act, then, was not to change the enactments of the first, as to any cases within the first. Those were entries made in 1839-or after; as to which the 34th chapter provided, that the rights of junior enterers should be saved, and necessarily meant junior enterers, from whom the .purchase money was not then payable, and who should pay it afterwards in due time. That fully provided for the cast, of an .entry subsisting at the time of passing the act, and no further saving was needful for it. Now, the 35th chapter in the first clause only alters -the enactment of
 
 *143
 
 the preceding chapter by enlarging the time, not prospectively for the payment of the purchase money, but pectively as to the date of the entry. They both fix the 1st of January, 1845, for the payment of the money ; but the first only takes in entries made after the 1st of January, 1839, while the other goes back to the 1st of January, 1836. Thus, every case, to which the 35th chapter can apply in its first clause, and which is not fully provided for in the other chapter, is a case, in which both of the conflicting.entries must necessarily be lapsed ; being entries between 1-S36-and 1839, on which the latest day of payment, according- to previous acts, was December 15th, 1841. The proviso of the 35th chapter, must, therefore, in reason be limited to the cases within its own enactments ; which, we- have seen, are not cases in which one entry was lapsed and the other subsisting, but are cases in which both entries were lapsed. This comports well, too, with the language of the proviso, speaking of an entry,
 
 “ for which the purchase money has been paid; ”
 
 which naturally implies, that the purchase money
 
 had become payable.
 
 Now, between lapsed entries, on one of which the purchase money had be.en paid, but the enterer neglected to perfect his title, the rule of jnstice is obvious, which gives to that one a preference. So between lapsed entries, on neither of which the. purchase money had been paid, when the act passed, it is plaih that he, who first pays, whether on the younger orolderentry ought, to-be preferred. There can be no other rule; because they alilfe-owe the privilege to the bounty of the State, and both were revived at
 
 the
 
 same time as well as by the same means. They stand, therefore, as if made simultaneously;, and- the right must be determined by the greater or less degree of diligence in completing the title.
 

 But upon an entry, on which the purchase money had not become payable in 1842, the Legislature could not have meant, that the purchase money should have been paid
 
 at that time,
 
 in order to preserve its preference over a lapsed entry. Hence, at all events, if the proviso to the 35th chapter can be considered as embracing subsisting as well as
 
 *144
 
 lapsed entries, the time referred to in the words, “ may have been paid,” is not that of passing the statute,- but must be that which is limited as the period, within which the pur* chase money must be paid. A lapsed entry shall not “interfere with a subsequent entry, for which the purchase money may have been paid ;
 
 ’*
 
 not may have been paid
 
 now,
 
 but may have been paid in
 
 in due time.
 
 If not so paid, then the entry, once lapsed but now revived, is to hold good ; but if it shall have been so paid before the expiration of the time given by law for its payment, then the older entry once extinct, must remain so. Here such payment was made by the plaintiff, and therefore she is entitled to the land. Decree a conveyance accordingly, with costs.
 

 Per Curiam,- Decree for the plaintiff.